AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

## for the

### Central District of California

FILED
CLERK, U.S. DISTRICT COURT

12/29/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ GR _____ DEPUTY

LODGED
CLERK, U.S. DISTRICT COURT

12/29/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ ᵃˡ _____ DEPUTY

| | |
|---|---|
| United States of America | |
| v. | Case No.   2:22-mj-05065-DUTY |
| FRANZ GREY, | |
| Defendant | |

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of December 16, 2022 in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

_/s/ Brandice Olmos_
Complainant's signature

Brandice Olmos, ATF Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:      December 29, 2022

_Karen L. Stevenson_
Judge's signature

City and state:   Los Angeles, California

Hon. Karen L. Stevenson, U.S. Magistrate Judge
Printed name and title

AUSA: Juan M. Rodriguez (x0304)

## ATTACHMENT A-1

PERSON TO BE SEARCHED

    The person of FRANZ GREY ("GREY"), date of birth October 20, 1965, with California Driver's License Number D4380084, GREY's California Department of Motor Vehicle records list him as standing six feet and three inches tall, with blonde hair and hazel eyes.

    The search of GREY shall include any and all clothing and personal belongings, digital devices, backpacks, wallets, briefcases, purse, folders, and bags that are within GREY's immediate vicinity and control at the location where the search warrant is executed.



**<u>Attachment A-2</u>**

<u>PROPERTY TO BE SEARCHED</u>

A black iPhone seized from a table in the living room of GREY's residence on December 16, 2022, by the Los Angeles Sheriff's Department ("LASD"), and currently maintained in the custody of the LASD, in Santa Clarita, California.

**ATTACHMENT B**

I. **ITEMS TO BE SEIZED**

1.    The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) (possession with intent to distribute controlled substances) and 846 (conspiracy and attempt to distribute controlled substances) and 18 U.S.C. §§ 922(g) (prohibited person in possession of a firearm) and 924(c) (possession of a firearm in furtherance of a drug trafficking crime) (the "Subject Offenses"), namely:

a.    Records, documents, programs, applications and materials, or evidence of the absence of same, sufficient to show call log information, including all telephone numbers dialed from any of the digital devices and all telephone numbers accessed through any push-to-talk functions, as well as all received or missed incoming calls;

b.    Records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show SMS text, email communications or other text or written communications sent to or received from any of the digital devices and which relate to the above-named violations;

c.    Records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show instant and social media messages (such as Facebook, Facebook Messenger, Snapchat, FaceTime, Skype, and WhatsApp), SMS text, email communications, or other text or written

communications sent to or received from any digital device and which relate to the above-named violations;

        d.   Records, documents, programs, applications, materials, or conversations relating to the trafficking of drugs, including ledgers, pay/owe records, distribution or customer lists, correspondence, receipts, records, and documents noting price, quantities, and/or times when drugs, guns, or ammunition were bought, sold, or otherwise distributed;

        e.   Audio recordings, pictures, video recordings, or still captured images related to the purchase, sale, transportation, or distribution of drugs, guns, or ammunition;

        f.   Contents of any calendar or date book;

        g.   Global Positioning System ("GPS") coordinates and other information or records identifying travel routes, destinations, origination points, and other locations; and

        h.   Any SUBJECT DEVICE which is itself or which contains evidence, contraband, fruits, or instrumentalities of the Subject Offenses, and forensic copies thereof.

        i.   With respect to any SUBJECT DEVICE containing evidence falling within the scope of the foregoing categories of items to be seized:

            i.   evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, e-mail, e-mail contacts, chat and instant messaging logs, photographs, and correspondence;

ii.   evidence of the presence or absence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

iii. evidence of the attachment of other devices;

iv.   evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device;

v.   evidence of the times the device was used;

vi.   passwords, encryption keys, biometric keys and other access devices that may be necessary to access the device;

vii. applications, utility programs, compilers, interpreters, or other software, as well as documentation and manuals, that may be necessary to access the device or to conduct a forensic examination of it;

viii.   records of or information about Internet Protocol addresses used by the device;

ix.   records of or information about the device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

2.   As used herein, the terms "records," "documents," "programs," "applications," and "materials" include records, documents, programs, applications, and materials created,

v

modified, or stored in any form, including in digital form on any digital device and any forensic copies thereof.

## II.  **SEARCH PROCEDURE FOR DIGITAL DEVICE**

3.    In searching the SUBJECT DEVICE (or forensic copies thereof), law enforcement personnel executing this search warrant will employ the following procedure:

a.    Law enforcement personnel or other individuals assisting law enforcement personnel (the "search team") may search any SUBJECT DEVICE capable of being used to facilitate the above-listed violations or containing data falling within the scope of the items to be seized.

b.    The search team will, in its discretion, either search each SUBJECT DEVICE where it is currently located or transport it to an appropriate law enforcement laboratory or similar facility to be searched at that location.

c.    The search team shall complete the search of the SUBJECT DEVICE as soon as is practicable but not to exceed 120 days from the date of issuance of the warrant.  The government will not search the digital device beyond this 120-day period without obtaining an extension of time order from the Court.

d.    The search team will conduct the search only by using search protocols specifically chosen to identify only the specific items to be seized under this warrant.

i.    The search team may subject all of the data contained in each SUBJECT DEVICE capable of containing any of the items to be seized to the search protocols to determine whether the SUBJECT DEVICE and any data thereon falls within the

scope of the items to be seized.  The search team may also search for and attempt to recover deleted, "hidden," or encrypted data to determine, pursuant to the search protocols, whether the data falls within the scope of the items to be seized.

ii.  The search team may use tools to exclude normal operating system files and standard third-party software that do not need to be searched.

iii. The search team may use forensic examination and searching tools, such as "EnCase," "Griffeye," and "FTK" (Forensic Tool Kit), which tools may use hashing and other sophisticated techniques.

e.  The search team will not seize contraband or evidence relating to other crimes outside the scope of the items to be seized without first obtaining a further warrant to search for and seize such contraband or evidence.

f.  If the search determines that a SUBJECT DEVICE does not contain any data falling within the list of items to be seized, the government will, as soon as is practicable, return the SUBJECT DEVICE and delete or destroy all forensic copies thereof.

g.  If the search determines that a SUBJECT DEVICE does contain data falling within the list of items to be seized, the government may make and retain copies of such data, and may access such data at any time.

h.  If the search determines that the SUBJECT DEVICE is (1) itself an item to be seized and/or (2) contains data

falling within the list of other items to be seized, the
government may retain the digital device and any forensic copies
of the digital device, but may not access data falling outside
the scope of the other items to be seized (after the time for
searching the device has expired) absent further court order.

       i.   The government may also retain a SUBJECT DEVICE
if the government, prior to the end of the search period,
obtains an order from the Court authorizing retention of the
device (or while an application for such an order is pending),
including in circumstances where the government has not been
able to fully search a device because the device or files
contained therein is/are encrypted.

       j.   After the completion of the search of the SUBJECT
DEVICE, the government shall not access digital data falling
outside the scope of the items to be seized absent further order
of the Court.

    4.   The review of the electronic data obtained pursuant to
this warrant may be conducted by any government personnel
assisting in the investigation, who may include, in addition to
law enforcement officers and agents, attorneys for the
government, attorney support staff, and technical experts.
Pursuant to this warrant, the investigating agency may deliver a
complete copy of the seized or copied electronic data to the
custody and control of attorneys for the government and their
support staff for their independent review.

    5.   During the execution of this search warrant, law
enforcement is permitted to (1) depress GREY's thumb- and/or

fingers onto the fingerprint sensor of the SUBJECT DEVICE (only if the device has such a sensor), and direct which specific finger(s) and/or thumb(s) shall be depressed; and (2) hold the device in front of GREY's face with his or her eyes open to activate the facial-, iris-, or retina-recognition feature, in order to gain access to the contents of any such device.  In depressing a person's thumb or finger onto a device and in holding a device in front of a person's face, law enforcement may not use excessive force, as defined in <u>Graham v. Connor</u>, 490 U.S. 386 (1989); specifically, law enforcement may use no more than objectively reasonable force in light of the facts and circumstances confronting them.

6.   The special procedures relating to digital devices found in this warrant govern only the search of digital devices pursuant to the authority conferred by this warrant and do not apply to any search of digital devices pursuant to any other court order.

<u>**AFFIDAVIT**</u>

I, Brandice Olmos, being duly sworn, declare and state as follows:

I. <u>**PURPOSE OF AFFIDAVIT**</u>

1.    This affidavit is made in support of a criminal complaint and arrest warrant against FRANZ GREY ("GREY") for a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm.

2.    This affidavit is also made in support of applications for warrants to search (1) the person of FRANZ GREY as described more fully in Attachment A-1, and (2) a black iPhone seized from a table in the living room of GREY's residence on December 16, 2022, and presently in the custody of the Los Angeles Sheriff's Department ("LASD"), in Santa Clarita, California, as described more fully in Attachment A-2.

3.    The requested search warrant seeks authorization to seize evidence, fruits, or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) (possession with intent to distribute controlled substances) and 846 (conspiracy and attempt to distribute controlled substances) and 18 U.S.C. §§ 922(g) (prohibited person in possession of a firearm) and 924(c) (possession of a firearm in furtherance of a drug trafficking crime)(the "Subject Offenses"), as described more fully in Attachment B.  Attachments A-1, A-2, and B are incorporated herein by reference.

4.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and

information obtained from various law enforcement personnel and
witnesses.  This affidavit is intended to show merely that there
is sufficient probable cause for the requested complaint, arrest
warrant, and search warrant, and does not purport to set forth
all of my knowledge of or investigation into this matter.
Unless specifically indicated otherwise, all conversations and
statements described in this affidavit are related in substance
and in part only and all dates are approximate.

## II. BACKGROUND OF AFFIANT

5.   I am a Special Agent with the Bureau of Alcohol,
Tobacco, Firearms, and Explosives ("ATF"), United States
Department of Justice, and have been so employed since August
2021.  Prior to being employed as an ATF Special Agent, I was a
student intern for the United States Marshals Service for
approximately one year.

6.   I graduated from Eastern Michigan University with a
Bachelor of Arts degree in Criminology, while receiving a full
athletic and academic scholarship.  I also graduated from
California Baptist University with a Master of Arts degree in
Forensic Psychology.  Following my education, I graduated from
the ATF's Special Agent Basic Training and from the Department
of Homeland Security's Criminal Investigator Training Program.
I have received training in the trafficking of firearms and
controlled substances, as well as the various means and methods
by which traffickers use in furtherance of firearms and drug
transactions.  I have also participated in multiple firearms and
drug trafficking investigations involving the illegal sales,

transfer, and possession of firearms and controlled substances. Additionally, I participated in many aspects of firearms and gang investigations, including conducting surveillance and the use of confidential informants and undercover agents to make controlled purchases of controlled substances and/or firearms.

### III. <u>SUMMARY OF PROBABLE CAUSE</u>

7.   On December 16, 2022, deputies with the LASD Santa Clarita Valley Station arrested FRANZ GREY, a convicted felon, for embezzlement in violation of California Penal Code § 503 after GREY was found underneath a U-Haul he had rented that had been reported stolen.  After being <u>Mirandized</u>, GREY gave the LASD deputies verbal consent to enter his unlocked residence to retrieve his cellular phone and house keys.  Upon entering the residence, located nearby in Santa Clarita, California, the deputies saw, in plain view, drug paraphernalia and a baggie containing suspected methamphetamine.

8.   During the resulting protective sweep of the house, upon entering the only bedroom, the LASD deputies saw, in plain view, approximately thirteen rounds of ammunition lying on the bed.  LASD then sought and obtained a state search warrant, attached hereto as Exhibit 1, and conducted a complete search of the premises.  LASD found and seized approximately ten firearms, approximately 2,000 rounds of ammunition, drugs, and various firearm parts/accessories.  Preliminary analysis of the firearms and ammunition indicates that at least one was manufactured outside of California.

## IV. <u>STATEMENT OF PROBABLE CAUSE</u>

9.   Based on my review of law enforcement reports, conversations with other law enforcement agents, my review of Body Worn Camera ("BWC") footage, and my own knowledge of the investigation, I am aware of the following:

**A.   GREY Embezzles U-Haul Truck**

10.   On November 14, 2022, GREY rented a 2017, Ford, U-Haul, box truck, bearing Arizona license plate AL53379, and agreed to return the vehicle on November 15, 2022.  GREY did not return the vehicle on the required day, and the U-Haul company made several attempts to contact GREY between the dates of November 16, 2022, and December 1, 2022.  On December 6, 2022, the U-Haul company, located in Canyon Country, California, reported the box truck as stolen, filed a report with local law enforcement, and named Franz GREY as a suspect for the embezzlement of the rented box truck.

**B.   Santa Clarita Sheriff's Station Receives Information on an Embezzled U-Haul Truck**

11.   On or about December 16, 2022, LASD received a call for service regarding a possible embezzled, U-Haul box truck, bearing Arizona license plate #AL53379, near the area of 33570 Bouquet Canyon Road, Santa Clarita, CA 91390.  This address is in a rural part of Santa Clarita and was less than 150 feet from GREY's home address located at 33556 Bouquet Canyon Road, Santa Clarita, CA 91390.

12.   On or about December 16, 2022, LASD Deputy Francisco reviewed GREY's record history and discovered that GREY was a

convicted felon, had an outstanding warrant for his arrest for violation of California Penal Code § 245(a)(4): Assault with a Deadly Weapon, and was on the FBI terrorist watch list.

13.   On December 16, 2022, at approximately 1937 hours, LASD Sergeant Rios, along with Deputies Tirado, Mendez, Tapanes, Marin, and Francisco went to 33570 Bouquet Canyon Road, Santa Clarita, CA 91390.  Upon LASD's arrival to that area, Sergeant Rios discovered an adult male underneath a U-Haul and ordered the suspect to come out with his hands up.  LASD deputies identified the adult male as GREY, detained him, and placed him in the back of a patrol car.  Deputy Francisco then confirmed the U-Haul's license plate matched the reported embezzled U-Haul's plate.

   **C.   GREY is Mirandized and Consents to Law Enforcement Entering his Home**

14.   On December 16, 2022, at approximately 1954 hours, Deputy Francisco, who had activated his BWC, read GREY his Miranda rights, to which GREY acknowledged that he understood them.  When questioned about the U-Haul, GREY stated that he did not receive any phone calls from U-Haul about the vehicle due to his telephone lines being cut by some "guys" from Lancaster, California, who recently shot at his house.  When asked if GREY attempted to notify U-Haul, he stated, "No."

15.   Deputy Francisco then asked GREY if he had proof of the shooting, to which GREY answered he had video proof of the shooting on his cellular phone, which was located in his residence.  Deputy Francisco asked GREY if he could retrieve

GREY's phone and house keys, to which GREY responded, "Yes."
Upon receiving verbal consent to retrieve the cellular phone
from inside GREY's residence, LASD deputies went to GREY's home.

> **D.    Law Enforcement Enters GREY's Home, Conducts a
>         Protective Sweep, and Ultimately Obtains a State
>         Search Warrant**

16.    Approximately 35 minutes after GREY's consent,
Deputies Tirado and Tapanes entered GREY's residence to retrieve
GREY's cellular phone, which was on a table in the living room,
approximately fifteen feet from the front door.  Upon attempting
to retrieve the cellular phone, Deputies Tirado and Tapanes saw,
in plain view, a large glass bulbous pipe containing a burnt
white crystal-like substance, resembling methamphetamine, and a
plastic baggie containing suspected methamphetamine, on the
table near the cellular phone.

17.    At this time, the LASD deputies proceeded to conduct a
protective sweep of the residence for officer safety.  Upon
entering the only bedroom in the residence, LASD deputies Tirado
and Mendez, who were wearing their BWC, saw in plain view,
eleven rounds of .223 caliber ammunition and two rounds of 5.56
caliber ammunition lying on the bed.  Additionally, two gun
safes were also present in the only bedroom.

> **E.    LASD Obtains a Search Warrant and Seizes Additional
>         Firearms and Drugs**

18.    Following the protective sweep, the LASD deputies
obtained a search warrant (see Exhibit 1) for the entire home.

19.    Pursuant to the state search warrant, the following
pieces of evidence were seized:

a.   One AR-style, 5.56 caliber pistol, bearing no serial number;

b.   One AR-style, .22 caliber pistol, bearing no serial number;

c.   One AR-style, 7.62 caliber rifle, bearing no serial number;

d.   One American Tactical, AR-style, 5.56 caliber rifle, bearing no serial number;

e.   One C.A.I. Georgia VT, 7.62 caliber pistol, bearing an obliterated serial number;

f.   One Romarm-Cugir, model Mini Draco 7.62 mm caliber  pistol, bearing serial number PD-3992-2014 RO;

g.   One O.F. Mossberg & Sons, Model 500A, 12-gauge shotgun, bearing serial number L152016;

h.   One Ligamec Corp, .50 caliber rifle, bearing serial number 21-1613;

i.   One Sig Sauer USA, AR-15, 5.56 caliber rifle, bearing an obliterated serial number;

j.   One AR-15, 5.56 caliber rifle, bearing an obliterated serial number;

k.   Approximately eleven upper and lower receivers;

l.   Approximately 2,000 rounds of various caliber ammunition, including: .223, 5.56, .308, 7.62x39, .38 special, 45, .50, and 12-guage;

m.   Various miscellaneous firearm parts/accessories;

n.   Approximately 28.88 gross grams of white suspected ip-110 hydrocodone pills;

o.   Approximately 43.04 gross grams of suspected methamphetamine;

p.   Approximately 60.54 gross grams of suspected methamphetamine;

q.   Approximately 15.95 gross grams of suspected psilocybin mushrooms; and

r.   Various miscellaneous drug paraphernalia

20.   The SUBJECT DEVICE was also retrieved from the table located in the living room of the residence.

**F.   Law Enforcement Recovers Firearm Near the U-Haul**

21.   On December 17, 2022, at approximately 1245 hours, LASD deputies were notified by the towing company that a black and tan colored, 9mm caliber pistol, bearing no serial number, loaded with approximately fourteen rounds of ammunition in the magazine.  The loaded firearm was found approximately twenty feet away from the passenger side of the embezzled U-Haul and in close proximity to where GREY was originally encountered by LASD deputies.  The firearm has been preserved, and is in the process of being analyzed for fingerprint and DNA testing.

**G.   GREY Makes Incriminating and False Exculpatory Statements During the Booking Process**

22.   At approximately 2128 hours, Deputy Francisco transported GREY to the Los Angeles County Jail and began the booking process.  Deputy Francisco continued to question GREY about the prohibited contents found inside his residence.  In regard to the found methamphetamine pipe, GREY responded, "Yeah, I smoke."  GREY also made several false exculpatory statements.

In regard to the ammunition, GREY stated that the ammunition belonged to his mother who used to live at the residence but admitted that she died "a while back."

23.   In regard to the two gun safes, GREY stated there was only cash inside the safes and there were no firearms within the safes.  Law enforcement searched the safes pursuant to the search warrant and located firearms and firearm parts.

24.   GREY further stated that he is the only person that lives in that residence.  He explained his father is the only other person with access to GREY's Residence, but that his father does not live at that location and is in the hospital.

25.   While executing the state search warrant, inside GREY's Residence, LASD deputies located mail and a social security card with GREY's name listed on both.

   **H.   GREY is a Convicted Felon**

26.   Based on ATF Special Agents' review of GREY's criminal history records, GREY has previously been convicted of the following felony crimes punishable by a term of imprisonment exceeding one year:

       a.   On or about January 3, 2008, GREY was convicted of a felony for a violation of California Vehicle Code § 20001(A), Hit and Run Resulting in Injury or Death, in the Superior Court of the State of California, County of Los Angeles, Case Number BA31417[1]; and

_____

[1] Certified convictions documents have been requested but have not yet been received.

b.    On or about January 3, 2008, GREY was convicted of a felony for a violation of California Health & Safety Code § 11350(A), Possession of a Controlled Substance, in the Superior Court of the State of California, County of Los Angeles, Case Number BA31417.

**I.   Drug Testing and Results**

27.  On December 29, 2022, ATF SA Brandice Olmos picked up four exhibits of suspected drugs to be transported to the DEA Southwest Laboratory for analysis.  Reports are still pending.

**J.   Interstate Nexus**

28.  On December 29, 2022, ATF Interstate Nexus Expert Alexander Liwienski examined multiple firearms and made the following conclusions:

a.    The Romarm-Cugir, model Mini Draco 7.62 mm caliber pistol, bearing serial number PD-3992-2014 RO was manufactured outside of the state of California.  Because it was found in the state of California, it has traveled in and affected interstate commerce.

b.    One O.F. Mossberg & Sons, Model 500A, 12-gauge shotgun, bearing serial number L152016 was manufactured outside of the state of California.  Because it was found in the state of California, it has traveled in and affected interstate commerce.

**V.   TRAINING AND EXPERIENCE ON DRUG OFFENSES**

29.  Based on my training and experience and familiarity with investigations into drug trafficking conducted by other law enforcement agents, I know the following:

a.   Drug trafficking is a business that involves numerous co-conspirators, from lower-level dealers to higher-level suppliers, as well as associates to process, package, and deliver the drugs and launder the drug proceeds.  Drug traffickers often travel by car, bus, train, or airplane, both domestically and to foreign countries, in connection with their illegal activities in order to meet with co-conspirators, conduct drug transactions, and transport drugs or drug proceeds.

b.   Drug traffickers often maintain books, receipts, notes, ledgers, bank records, and other records relating to the manufacture, transportation, ordering, sale and distribution of illegal drugs.  The aforementioned records are often maintained where the drug trafficker has ready access to them, such as on their cell phones and other digital devices.

c.   Communications between people buying and selling drugs take place by telephone calls and messages, such as e-mail, text messages, and social media messaging applications, sent to and from cell phones and other digital devices.  This includes sending photos or videos of the drugs between the seller and the buyer, the negotiation of price, and discussion of whether or not participants will bring weapons to a deal.  In addition, it is common for people engaged in drug trafficking to have photos and videos on their cell phones of drugs they or others working with them possess, as they frequently send these photos to each other and others to boast about the drugs or facilitate drug sales.

d.   Drug traffickers often keep the names, addresses, and telephone numbers of their drug trafficking associates on their digital devices.  Drug traffickers often keep records of meetings with associates, customers, and suppliers on their digital devices, including in the form of calendar entries and location data.

## VI. <u>TRAINING AND EXPERIENCE ON FIREARMS OFFENSES</u>

30.   From my training, personal experience, and the collective experiences related to me by other law enforcement officers who conduct who conduct firearms investigations, I am aware of the following:

a.   Persons who possess, purchase, or sell firearms generally maintain records of their firearm transactions as items of value and usually keep them in their residence, or in places that are readily accessible, and under their physical control, such in their digital devices.  It has been my experience that prohibited individuals who own firearms illegally will keep the contact information of the individual who is supplying firearms to prohibited individuals or other individuals involved in criminal activities for future purchases or referrals.  Such information is also kept on digital devices.

b.   Many people also keep mementos of their firearms, including digital photographs or recordings of themselves possessing or using firearms on their digital devices.  These photographs and recordings are often shared via social media, text messages, and over text messaging applications.

c.    Those who illegally possess firearms often sell their firearms and purchase firearms.  Correspondence between persons buying and selling firearms often occurs over phone calls, e-mail, text message, and social media message to and from smartphones, laptops, or other digital devices.  This includes sending photos of the firearm between the seller and the buyer, as well as negotiation of price.  In my experience, individuals who engage in street sales of firearms frequently use phone calls, e-mail, and text messages to communicate with each other regarding firearms that the sell or offer for sale. In addition, it is common for individuals engaging in the unlawful sale of firearms to have photographs of firearms they or other individuals working with them possess on their cellular phones and other digital devices as they frequently send these photos to each other to boast of their firearms possession and/or to facilitate sales or transfers of firearms.

## VII.  TRAINING AND EXPERIENCE ON DIGITAL DEVICES

31.  As used herein, the term "digital device" includes the SUBJECT DEVICE.

32.  Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

a.    Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet.  Normally, when a person deletes a file on a computer, the data contained

13

in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time. Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

b.    Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device. That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them. For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

c.    The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it. For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

d.    Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions.  Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed.  Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

33.    Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it is not always possible to search devices for data during a search of the premises for a number of reasons, including the following:

a.    Digital data are particularly vulnerable to inadvertent or intentional modification or destruction.  Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.

b.    Digital devices capable of storing multiple gigabytes are now commonplace.  As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

34.    The search warrant requests authorization to use the biometric unlock features of a device, based on the following,

15

which I know from my training, experience, and review of publicly available materials:

      a.   Users may enable a biometric unlock function on some digital devices.  To use this function, a user generally displays a physical feature, such as a fingerprint, face, or eye, and the device will automatically unlock if that physical feature matches one the user has stored on the device.  To unlock a device enabled with a fingerprint unlock function, a user places one or more of the user's fingers on a device's fingerprint scanner for approximately one second.  To unlock a device enabled with a facial, retina, or iris recognition function, the user holds the device in front of the user's face with the user's eyes open for approximately one second.

      b.   In some circumstances, a biometric unlock function will not unlock a device even if enabled, such as when a device has been restarted or inactive, has not been unlocked for a certain period of time (often 48 hours or less), or after a certain number of unsuccessful unlock attempts.  Thus, the opportunity to use a biometric unlock function even on an enabled device may exist for only a short time.  I do not know the passcodes of the devices likely to be found in the search.

      c.   The person who is in possession of a device or has the device among his or her belongings is likely a user of the device.  Thus, the warrant I am applying for would permit law enforcement personnel to, with respect to any device that appears to have a biometric sensor and falls within the scope of the warrant: (1) depress GREY's thumb- and/or fingers on the

device(s); and (2) hold the device(s) in front of GREY's face with his or her eyes open to activate the facial-, iris-, and/or retina-recognition feature.

35.  Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

**VIII.     <u>CONCLUSION</u>**

36.  For all of the reasons described above, there is probable cause to believe that FRANZ GREY has committed a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm.  There is also probable cause that the items to be seized described in Attachment B will be found in a search of

//

//

the person of FRANZ GREY described in Attachment A-1, and the

SUBJECT DEVICE described in Attachment A-2.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this _29th_ day of
_December_ , 2022.

HONORABLE KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE

# Exhibit 1

SW NO._____

## STATE of CALIFORNIA, COUNTY of Los Angeles,
# SEARCH WARRANT and AFFIDAVIT
## (AFFIDAVIT)

Your Affiant, Francisco Clint, swears under oath that the facts expressed by him/her in the attached and incorporated Statement of Probable Cause are true and that based thereon he/she has probable cause to believe and does believe that the articles, property, and persons described below are lawfully seizable pursuant to Penal Code Section 1524 et seq., as indicated below, and are now located at the locations set forth below.   Wherefore, Affiant requests that this Search Warrant be issued.

_____
(Signature of Affiant)

HOBBS SEALING REQUESTED: ☐ YES ☒ NO
NIGHT SEARCH REQUESTED: ☒ YES ☐ NO

# (SEARCH WARRANT)

THE PEOPLE OF THE STATE OF CALIFORNIA TO ANY PEACE OFFICER IN THE COUNTY OF Los Angeles: proof by affidavit, having been this day made before me by **Peace Officer Francisco Clint** that there is probable cause to believe that the property or person described herein may be found at the location(s) set forth herein and that it is lawfully seizable pursuant to Penal Code Section 1524 et seq., as indicated below by "☒"(s), in that:

☐ property was stolen or embezzled;

☒ property or things were used as the means of committing a felony;

☒ property or things are in the possession of any person with the intent to use them as a means of committing a public offense, or in the possession of another to whom he or she may have delivered them for the purpose of concealing them or preventing their being discovered;

☒ property or things to be seized consist of any item or constitute any evidence that tends to show a felony has been committed, or tends to show that a particular person has committed a felony;

☐ property or things to be seized consist of evidence that tends to show that sexual exploitation of a child, in violation of Section 311.3, or possession of matter depicting sexual conduct of a person under the age of 18 years, in violation of Section 311.11, has occurred or is occurring;

☐ there is a warrant to arrest a person;

## You are Therefore COMMANDED to SEARCH:

Location #1:  33556 Unit 31 Bouquet Canyon Road (See attachment "A")

## For the FOLLOWING PROPERTY, THING(s) or PERSON(s):

See attachment "A", "

**AND TO SEIZE IT / THEM IF FOUND** and bring it / them forthwith before me, or this court, at the courthouse of this court.

This SEARCH WARRANT and incorporated Affidavit were sworn to as true and subscribed before me on this ~~16th~~ 17th day of December 2022 , at __0048 hrs__   A.M. / P.M. Wherefore, I find probable cause for the issuance of this SEARCH WARRANT and do issue it.

_____
(Signature of Magistrate)

*Steven D. Blades*

NIGHT SEARCH APPROVED: ☒ YES ☐ NO

Judge of the Superior Court of California, County of Los Angeles, ~~Santa Clarita Court~~, Dept. Magistrate Unit

Steven D. Blades

(Magistrate's Printed Name)

RETURN TO BE FILED WITH LOCAL COURT

ATTACHMENT "A"

**LOCATION DESCRIPTION:**

The location is described as 33556 Unit 31 Bouquet Canyon Road in the unincorporated area of Santa Clarita, a single-story residence, wood painted red, and a tile-less roof. The residence is in a rural area located on the mountain hillside just east of Bouquet Canyon Road with the main entrance off an unknown open private dirt road. There is an orange fence surrounding the dirt road driveway. There is a lower basement with two locked storage rooms attached to the residence. The address, "33556 Unit 31 Gray" is affixed to the mailbox to the front of the dirt roadway leading to the residence.

**AREAS TO BE SEARCHED AT ALL LOCATIONS NAMED IN THIS AFFIDAVIT AND SEARCH WARRANT ARE AS FOLLOWS:** All rooms associated with Suspect Grey at the location.  Also to be searched are any additional vehicles in the control of any of the persons herein named in the search warrant. One "Union Safe Co." safe, 55 inch tall, 29 inch wide, and 20 inch depth and one "Mesa Safe Co." safe, 58 inch tall, 32 inch width, and 22 inch depth.

Your affiant further requests to use a video camera in order to take video pictures of the location prior to and after the search. This video taping will be done to depict the condition of the location prior to and after the search for evidentiary reasons regarding any possible property damage or injury claims.

**FOR THE FOLLOWING PROPERTY:**

Methamphetamine and any other controlled substances, drug paraphernalia, scales and other weighing devices, packaging materials, records tending to establish and document sales of methamphetamine or any controlled substance.

Live ammunition and any other weapons related to the ammunition or weapons inside the safe or inside the location. Any documents establishing domain of Suspect Gray, Franz Joseph.



## AFFIANT'S TRAINING AND EXPERIENCE

Your affiant, Francisco, Clint #602372, is employed by the Los Angeles County Sheriff's Department and has been employed as a Deputy Sheriff for 10years. During my employment with the Sheriff's Department, I have worked a variety of assignments including assignments to Custody Division, uniformed patrol, field training officer and now your affiant is currently assigned to the Special Assignment Team at Santa Clarita and has been so assigned for over 7 months. During this time, your affiant has investigated and has assisted in investigating approximately 50 drug related arrest and 35 firearm related offenses.

As a patrol officer, I conducted preliminary investigations and made arrests for these same crimes. As a field training officer, I instructed newly assigned deputies in the proper methods of completing the basic preliminary investigation for numerous crimes including but not limited to narcotics for sales, robbery, burglary, assaults, sexual assaults, and murder.




### Statement of Probable Cause

On November 14th, 2022, (922-17094-0617-330) Suspect Gray rented a vehicle (2017, Ford, U-Haul, Box Truck, AZ/AL53379) from "U-Haul" (vehicle rental company) and Suspect Gray agreed to return the vehicle on November 15, 2022. Suspect Gray did not return the vehicle and the rental company made multiple attempts to contact Suspect Gray on November 16 and December 1, 2022.

On December 5th, 2022, (922-17094-0617-330) The U-Haul company filed a report with law enforcement and reported Suspect Gray as a named suspect for the embezzlement on the rented vehicle (AZ/AL53379).

On December 16th, 2022, we received information the embezzled vehicle was at this location. Prior to responding to the location, we verified that the suspect had a $5,000 bail warrant for assault with deadly weapon and had a prior felony conviction. We located the embezzled, U-Haul (AZ/AL53379) box truck with the suspect underneath the carriage. We detained and arrested Suspect Gray for being in possession of the embezzled vehicle.

The suspect gave us verbal consent to enter his unlocked residence to retrieve his cell phone and house keys. While inside the residence, in plain view, we saw drug paraphernalia and a bag containing methamphetamine. Prior to continuing to locate his cell phone and keys, or continue to conduct a narcotics investigation. We conducted a protective sweep of the residence for officer safety. While conducting a protective sweep. We saw (11) .233 caliber live ammunition rounds and (2) 556 caliber live ammunition rounds, in plain view, on the suspect's bed. Both safes are in the suspect's bedroom where the ammunition was located.

Based on the following facts contained in this affidavit, I believed the location contains articles to be seized pursuant to this search warrant and they are sizeable oersuant to section 1524 Penal Code I therefore request this search warrant to be issued.

Night service is being requested based on the fact we are continuing our investigation at this time.

*SDB*